**IN THE UNITED STATES DISTRICT COURT**
**FOR THE ESTERN DISTRICT OF PENNSYLVANIA**

TERICA CARL

      Plaintiff,

AMAZON.COM, INC.

      Defendant.

CIVIL DIVISION

Civil Action No.  21-2179

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, Terica Carl, by and through her undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendant and states as follows:

**INTRODUCTION**

Plaintiff's employer described her as a "safety-rockstar."  She received exemplary reviews and quickly rose through the ranks.  Yet, despite her stellar performance, Amazon terminated her employment.

Plaintiff's termination was the result of Amazon.com Inc. ("Amazon") empowering her supervisor, Dave Goldberg, to discriminate against and harass Plaintiff.  He continuously levied disparaging remarks, comments, and treated Plaintiff differently than similarly-situated workers. Amazon did nothing to correct this behavior.  The culmination of Dave's compilation of mistreatment came in the form of hurling a stereotyped-insult at Plaintiff.  That is, he called her a "pussy cat" following a routine work dispute.  Indeed, other coworkers found this remark disturbing.  They reported Dave to management. Still, Amazon did nothing.

To the contrary, not only did Amazon fail to conduct an investigation, they promoted him to a more senior position.   Amazon rewarded Dave with a better position following his misconduct.   And, shortly thereafter, Amazon terminated Plaintiff in retaliation for going against the grain and facilitating her and her coworkers' protected activity; *i.e*, making a formal complaint against a supervisor engaged in discriminatory conduct.

1.      All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

**JURISDICTION AND VENUE**

2.      The causes of action of this matter arise under Title VII of the Civil Rights Act of 1964 and the ADEA.

3.      The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

4.      The District Court has jurisdiction over Count II (ADEA) pursuant to 229 U.S.C. §§ 621-31.

5.      Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

6.      On or about April 1, 2021, Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging sex and age discrimination as well as retaliation. *See* EEOC Charge of Discrimination, attached as Exhibit 1.

7.      The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued.  *See* Exhibit 2.

8.      Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

9.      Terica Carl 48-year old woman who resides at 205 Kenton Drive, Langhorne, PA 19007.

10.     Amazon.com, Inc. ("Amazon") is a multinational company that provides logistics services to consumers.   At all relevant times, Plaintiff worked at the 2251 Cabbot Blvd., Langhorne Lane, 19077 location.

## FACTUAL BACKGROUND

11.     Plaintiff, a person identifying and presenting as female, was hired by Amazon on February 12, 2019.

12.     There, she first reported, in her yard marshal position, to Michael, a site leader. Her supervisor later changed to Vance, then to Christian, and then to Tiffany.

13.     Plaintiff complained to each supervisor – multiple times – that other yard marshals violated Amazon's rules and regulations.

14.     Due to Plaintiff's excellent performance, Amazon promoted Plaintiff from a Tier II to a Tier III yard marshal. In this new position, as a Tier III, Amazon gave Plaintiff management duties. She also continued her previous duties from Tier II, which included, amongst other things, picking the merchandise to be shipped to customers from the Amazon warehouse, controlling the traffic in the yard, and ensuring the safety of other Amazon employees.

15. After her promotion, Plaintiff continued to perform at an exceptional level without any complaints from management related to her job performance. In fact, Plaintiff was praised for her work performance.

16. Site managers named her a "safety rockstar." Plaintiff's former site leader also recognized Plaintiff's exemplary performance during "stand up" and phone meetings conducted at the site. She was also responsible for training all safety employees prior to her supervisor Dave's promotion to that role.

17. Eventually, Plaintiff began to report to a new supervisor, David Goldberg ("Dave"). Dave was a safety supervisor to whom all Amazon staff at Plaintiff's location, including Plaintiff, reported. Up until that point, Plaintiff did not have any performance issues; however, Dave quickly became overly critical of Plaintiff's work performance.

18. Prior to Dave, Plaintiff never received criticism for her work performance, but was informed that her performance was exemplary.

19. Regardless of Plaintiff's exceptional performance, Amazon enabled Dave to discriminate against Plaintiff.

20. Plaintiff was also subject to persistent harassment by Dave. Dave would often make comments, remarks, and express other outward displeasure towards Plaintiff.

21. In less than seven months after joining Amazon, Dave began to treat Plaintiff in a hostile and discriminatory manner while Amazon turned a blind eye to Dave's unlawful conduct. Specifically, Dave held Plaintiff to a higher standard than his counterparts.

22. For example, there was an instance in which Dave berated Plaintiff for purportedly miscounting vans, which allegedly caused three vans to arrive late.

23. Plaintiff explained to Dave that she did count the vans and that she acted according to his command. She followed Amazon's safety regulations and protocols, which was to walk and cut off all other vans from entering the building and directing that those vans be loaded outside.

24. Upon believing that Plaintiff violated his authority, Dave screamed at Plaintiff. He proceeded to call Plaintiff a "pussy cat" during the process. This is a derogatory statement meant to demean women and analogize her behavior to a reproductive organ on her body. This insult is based on gender stereotypes and is both degrading and discriminatory.

25. Several employees witnessed the scene and felt compelled to write a two-page report detailing the altercation, informing Amazon of the name-calling and harassment. Yet Amazon never contacted the witnesses at the scene. Nor did the investigation result in Dave suffering any adverse employment consequences or discipline.

26. To the contrary, Amazon promoted Plaintiff's harasser to a Tier IV position during the investigation. This, coupled by the fact that several managers and supervisors levied complaints against Dave, evidences Amazon's disparate treatment.

27. As an added note, instead of instituting corrective action, Amazon provided Dave with a tangible employment benefit. Amazon ratified Dave's discrimination and harassment through its decision to not take corrective action and instead promote him.

28. In addition, Dave created a hostile work environment by regularly making inappropriate comments to Plaintiff. He stalked Plaintiff and harassed her. This stalking and harassment eventually culminated in Dave calling Plaintiff a "pussy cat," which, again, multiple employees witnessed.

29.     On a day to day basis, Dave screamed at Plaintiff, asking her why the vans are not moving.  Plaintiff responded that this was because she did not have a green light and inquired why he did not communicate with the walkie talkie, which was the norm.  This was done just to harass Plaintiff.

30.     On a day to day basis,  Dave would come down from the ramp, at the site, and demand status reports on temperature checks for Covid-19.  Dave would berate Plaintiff and ask why she was checking the temperature in a certain way.  Plaintiff, however, checked the temperatures in accordance with the way she was trained.  And Dave knew this.  Plaintiff and Dave had the same interactions with respect to personal protective equipment ("PPE").  Dave knew that Plaintiff was performing the tasks correctly.  Yet he found any excuse he could to berate and harass Plaintiff.

31.     Dave would also routinely make comments to women, including Plaintiff, about their physical appearance.  He would say things such as "when am I going to see skin," and "I want to see some legs." Dave's comments were made in a harassing manner that altered the working conditions of the female employees at Amazon, including Plaintiff.

32.     Dave also unprofessionally used profanity in the workplace.  He would routinely use the "f-word" when performing tasks and giving orders.  He habitually used profanity in his dealings with Plaintiff.

33.     Dave's actions were not only discriminatory but also harassing in nature.  Dave's comments, remarks, and crude interactions with Plaintiff classifies as severe and pervasive.

34.     Prior to Plaintiff's termination, she communicated informally to other coworkers that Dave's behavior was inappropriate and sexist. The Third Circuit has found that protected activity may consist of informal complaints to coworkers that are communicated to management.

*Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 261 (3d Cir. 2003) (plaintiff's informal complaints of sex discrimination to coworkers constituted protected activity if they were communicated to management).

35.     Further, Amazon's termination of Plaintiff occurred shortly after Plaintiff's coworkers lodged the two-page report against Dave.  Upon receipt of the report, Amazon should have thoroughly investigated Dave's actions.

36.     Instead, Amazon responded to complaints from Plaintiff's cohorts by summarily firing Plaintiff. Rather than conducting a fulsome investigation, Amazon promoted Dave.  With respect to Amazon's stated legal non-discriminatory reason, Amazon provided that the separation was due to Plaintiff allowing her daughter to take shelter in an area in which employees generally access to take refuge from the weather.

37.     However, such action was clearly pretext for Plaintiff's earlier complaints of discrimination.  Numerous employees use the area – and allowed non-Amazon employees to use the area – to provide shelter from the elements.

38.     Amazon took adverse employment action against Ms. Carl when it terminated her employment.

39.     Upon information and belief, Plaintiff's age also factored into Amazon's decision to terminate her.

40.     Plaintiff was, at all relevant times, an individual over the age of 40.

41.     Upon information and belief, Amazon terminated Plaintiff who was substantially older than other workers in her cohort.

42.     Upon information and belief, Amazon replaced Plaintiff with a worker substantially younger.

<u>**COUNT I**</u>[1]
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Gender Dscrimination; Retaliation; Hostile Work Environment)**

43.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

44.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Title VII.

45.     Defendant acted intentionally and willingly, with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

46.     Plaintiff's supervisor made disparaging comments, remarks, and insults to Plaintiff on the basis of her sex.

47.     These disparaging comments, remarks, and insults were unwelcome.

48.     These disparaging comments, remarks, and insults were offensive to Plaintiff and to a reasonable person.

49.     The harassment that Plaintiff endured was both severe and pervasive.

50.     As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages and losses and has incurred attorneys' fees and costs.

51.     Plaintiff believes and therefor averes that she was discriminated against and subjected to a hostile work environment on the basis of: 1) her sex/gender; 2) stereotypes of her sex and gender; and/or 3) her complaints of gender discrimiantion.

52.     Amazon took no corrective action against the complaints that were made against Plaintiff's supervisor.

53.     Plaintiff was terminated in retaliation for being involved in complaints that were made against her supervisor.

---

[1] Plaintiff will be requesting leave to file her PHRA claims with the Court.

54.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT II
### Age Discrimination in Employment Act, 29. U.S.C. § 621, et seq.

55.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

56.    Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the ADEA.

57.    Plaintiff is and was at the time of her termination, over forty years of age, and an individual within the class protected by the ADEA.

58.    In discriminating against and harassing Plaintiff because of Plaintiff's age, Defendant violated the ADEA.

59.    Defendant's violations were intentional and willful.

60.    Liquidated damages are warranted given Defendant's willful violation of the ADEA.

61.    As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff suffered damages and has incurred attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a)    Enjoining and permanently retraining the violations alleged herein;

b)  Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

c)  Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

d)  Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

e)  Awarding punitive damages to Plaintiff;

f)  Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, the PHRA, and the PFPO (to the extent applicable);

g)  Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

h)  Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

Dated: May 18, 2021

*/s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT
LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA

(t) 412-301-3908
andrew.lacy@employment-labor-law
.com

*Counsel for Plaintiff*